**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

SHERI COLEMAN, on behalf of                                                        PLAINTIFF
C.D.L., a minor

v.                                           No. 2:11CV00237 JLH

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration                                                     DEFENDANT

## OPINION AND ORDER

Sheri Coleman has appealed the final decision of the Commissioner of the Social Security

Administration denying her claim for Supplemental Security Income on behalf of her minor daughter,

C.D.L.,[1] the claimant.  The Court must affirm the Commissioner's decision if it is supported by

substantial evidence on the record as a whole and if it is not based on legal error.  42 U.S.C. §§

405(g), 1383(c)(3); *Moore ex rel. Moore v. Barnhart*, 413 F.3d 718, 721 (8th Cir. 2005); *Long v.

Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *Young ex rel. Trice v. Shalala*, 52 F.3d 200, 201-02 (8th

Cir. 1995) (substantial evidence review in child benefits case).  Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v.

Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); *Moore ex rel. Moore

v. Barnhart*, 413 F.3d at 721.  In determining whether the Commissioner's decision is supported by

substantial evidence, the Court must consider evidence that detracts from the Commissioner's

decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's

decision merely because substantial evidence would have supported an opposite decision.  *Sultan v.

Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

---

[1] Since the claimant is a minor, only her initials should be used in court filings.  Fed. R. Civ.
P. 5.2(a).

After conducting an administrative hearing at which Coleman testified, the Administrative Law Judge concluded that the claimant had not been under a disability within the meaning of the Social Security Act at any time through December 7, 2009, the date of his decision.  (Tr. 28)  On October 24, 2011, the Appeals Council denied Coleman's request for a review of the ALJ's decision, thereby making it the final decision of the Commissioner.  (Tr. 1-3)  Coleman then filed her complaint initiating this appeal.

The only issue before this Court is whether the decision that the claimant was not disabled within the meaning of the Act is supported by substantial evidence.  The statute provides:

> An individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).

In determining whether an SSI claimant under the age of 18 is under a disability, a three-step sequential evaluation process is used.  20 C.F.R. § 416.924(a).  The first step is a determination of whether the child is engaged in substantial gainful activity.  *Id.*, § 416.924(b).  If so, benefits are denied; if not, the evaluation continues to the next step.  The second step is a determination of whether the impairment or combination of impairments is severe, *i.e.*, more than a slight abnormality that causes no more than minimal functional limitations.  *Id.*, § 416.924(c).  If not, benefits are denied; if so, the evaluation continues.  The third step is a determination of whether the child has an impairment or impairments that meet, medically equal or functionally equal in severity a Listed impairment.  *Id.*, § 416.924(d).  If so, and if the duration requirement is met, benefits are awarded; if not, benefits are denied.

2

The ALJ found that the claimant had not engaged in substantial gainful activity since September 24, 2007, her application date.  (Tr. 19)  He determined she did have severe impairments, attention deficit hyperactivity disorder and oppositional defiant disorder, but that she did not have any impairment or combination of impairments that met or medically equaled a Listing or that functionally equaled a Listed impairment.  *Id*.  Consequently, he found that she was not disabled.  (Tr. 28)

Since the claimant had severe impairments that did not meet or medically equal a Listing, it was necessary for the ALJ to determine if the impairments functionally equaled a Listing.  20 C.F.R. § 416.926a(a).  Functional equivalence is assessed based on domains of functioning.  Domains are broad areas of functioning intended to capture all that a child can or cannot do.  Social Security Ruling 09-2p, *1.  An impairment is functionally equivalent to a Listing when the impairment results in marked limitations in two domains of functioning or an extreme limitation in one domain of functioning.  20 C.F.R. § 416.926a(a).  A marked limitation in a domain seriously interferes with a child's ability to independently initiate, sustain or complete activities.  20 C.F.R. § 416.926a(e)(2). It also means a limitation that is "more than moderate" but "less than extreme."  *Id*.  It is the equivalent of functioning expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.  *Id*.  An extreme limitation in a domain seriously interferes with a child's ability to initiate independently, sustain or complete activities.  20 C.F.R. § 416.926a(e)(3).  Extreme limitation also means a limitation that is "more than marked."  *Id*.  It is the rating given to the worst limitations.  *Id*.  It is the equivalent of functioning expected on standardized testing with scores that are at least three standard deviations below the mean.  *Id*.

The domains of functioning are:

1) Acquiring and using information;

3

2) Attending and completing tasks;

3) Interacting and relating with others;

4) Moving about and manipulating objects;

5) Caring for yourself; and

6) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i-vi).  These domains are described in greater detail, with examples, in the regulations.  20 C.F.R. § 416.926a(g)-(l).

The ALJ found the claimant had marked limitation in attending and completing tasks.[2] (Tr. 25)  He found no extreme limitation in any domain and no other marked limitation of functioning in any other domain.  (Tr. 23-28)

Coleman contends that the claimant had marked limitations in two domains, acquiring and using information and attending and completing tasks.  (Br. 11)  Since the ALJ found marked limitation in the domain of attending and completing tasks, there is no need to discuss that domain; the only domain that is in contention is acquiring and using information.  The applicable regulation, in pertinent part, states as follows:

> (g) *Acquiring and using information*. In this domain, we consider how well you acquire or learn information, and how well you use the information you have learned.
> (1) *General*. (i) Learning and thinking begin at birth. You learn as you explore the world through sight, sound, taste, touch, and smell. As you play, you acquire

---

[2] Inconsistently, the ALJ also noted, "She has limitations in this area [attending and completing tasks], but not to a marked or extreme degree so long as she is medically compliant." (Tr. 25)  Coleman notes this contradiction, and urges that it should call for reversal of the ALJ's decision. (Pl.'s Br. 8, 10-11)  The Court deems this no more than a scrivener's error not affecting the outcome of the decision.  The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.  *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 1706, 173 L. Ed. 2d 532 (2009).  Coleman has made no such showing.

concepts and learn that people, things, and activities have names. This lets you understand symbols, which prepares you to use language for learning. Using the concepts and symbols you have acquired through play and learning experiences, you should be able to learn to read, write, do arithmetic, and understand and use new information.

(ii) Thinking is the application or use of information you have learned. It involves being able to perceive relationships, reason, and make logical choices. People think in different ways. When you think in pictures, you may solve a problem by watching and imitating what another person does. When you think in words, you may solve a problem by using language to talk your way through it. You must also be able to use language to think about the world and to understand others and express yourself; e.g., to follow directions, ask for information, or explain something.

(2) *Age group descriptors.*

\* \* \*

(iv) *School-age children (age 6 to attainment of age 12)*. When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

\* \* \*

(3) *Examples of limited functioning in acquiring and using information*. The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage; e.g., an example below may describe a limitation in an older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.

(i) You do not demonstrate understanding of words about space, size, or time; e.g., in/under, big/little, morning/night.

(ii) You cannot rhyme words or the sounds in words.

(iii) You have difficulty recalling important things you learned in school yesterday.

(iv) You have difficulty solving mathematics questions or computing arithmetic answers.

(v) You talk only in short, simple sentences and have difficulty explaining what you mean.

20 C.F.R. § 416.926a.

In regard to this domain, the ALJ wrote:

The claimant has been functioning in the regular classroom setting. She is below grade level in her academic skills, but makes good grades in other classes. She has reported improved grades since starting back to school and her teacher noted improved behavior after she started taking medication. Overall, the record shows the claimant is not mentally retarded and she has good adaptive skills with no need for special supervision. She has poor reading and comprehension skills, but is able to understand and participate in classroom discussions and comprehend and follow instructions with no more than slight difficulty. Accordingly, the Administrative Law Judge finds she has more than mild, but less than marked limitations in this domain.

(Tr. 24) Other evidence in the record supports the conclusion that the claimant had "less than marked" limitation of functioning in the domain of acquiring and using information. Although she repeated kindergarten, she was promoted to the first and second grades. (Tr. 139) She was in regular classes, not special education. (Tr. 211) Her grades were improving. (Tr. 139) Her teacher indicated that counseling had improved her classroom behavior "a great deal." (Tr. 185) Her doctor noted improved home and school behavior and improved grades. (Tr. 192, 194) Coleman testified that she had received the claimant's report card the previous day, and it showed A's and B's. (Tr. 36)

In February of 2008, Charles M. Spellmann, Ph.D., completed an intellectual assessment and evaluation of adaptive functioning on the claimant. (Tr. 211-13) Results of IQ testing revealed that the claimant was functioning within the borderline range of intelligence. (Tr. 212) Spellmann thought that those scores might underestimate the claimant's functioning level because of her low key manner. *Id*. "I suspect she is more likely in the upper Borderline to Low Average range (IQ 75-85).

WRAT[3] scores suggest academic achievement to be compatible with this higher estimate." Spellmann noted that the claimant had adequate capacity to cope with the typical mental/cognitive demands of basic work-like tasks and adequate ability to attend and sustain concentration on basic work tasks.  (Tr. 213)

Coleman points out that on December 3, 2007, a state agency psychologist indicated that the claimant had marked limitation of functioning in the domain of acquiring and using information.  (Br. 13, Tr. 205-10)  However, on February 27, 2008, a state agency medical doctor determined that, while the claimant had a marked limitation of functioning in the domain of attending and completing tasks, she had less than marked limitation of functioning in the domain of acquiring and using information.  (Tr. 217-22)  The medical doctor also concluded that the claimant's impairments did not functionally equal a Listing.  (Tr. 217)  There was more information, and more current information, available to the medical doctor than to the psychologist, so the ALJ was entitled to give greater credence to the opinion of the medical doctor.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record that contradicts his findings.  The test is whether there is substantial evidence in the record as a whole that supports the decision of the ALJ.  *Moore*, 413 F.3d at 721; *Young*, 52 F.3d at 201-02.  The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, the medical evidence, and the other evidence.  There is evidence in the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case.

---

[3] Wide Range Achievement Test.  Neal M. Davis, <u>Medical Abbreviations: 30,000 Conveniences at the Expense of Communications and Safety</u>, 310 (14th Ed. 2009).

*Richardson v. Perales*, 402 U.S. at 401; *see also Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004).  The Commissioner's decision is not based on legal error.

THEREFORE, the final determination of the Commissioner is affirmed.  Coleman's complaint is dismissed with prejudice.

IT IS SO ORDERED this 5th day of November, 2012.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE